DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ERNEST TERRELL LAWSON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2024-2477

[July 23, 2025]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Michael J. Linn, Judge; L.T. Case No. 562023CF002894A.

Daniel Eisinger, Public Defender, and Austin C. Edwards, Assistant Public Defender, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Convicted of possession of a substitute cathinone, appellant claims fundamental error in the charging document, the jury instructions, and the proof. He also argues the trial court and this Court have violated the constitutional separation of powers and usurped the power of the Attorney General under section 893.035, Florida Statutes (2016), by determining that the drug which he was charged with possessing was a prohibited substance. We find no fundamental error in any of the issues raised and that section 893.035 is not applicable in this case. We thus affirm.

Appellant was stopped and arrested for possession of what appeared to be "Molly." A crime lab tested and identified the substance as "Dimethylpentylone." The State charged appellant with possession of a substituted cathinone pursuant to section 893.13(6), Florida Statutes (2023). At trial, the State presented an expert who identified the substance as Dimethylpentylone and explained "on the street it's sometimes referred to as bath salts or Molly." The expert testified that Dimethylpentylone is a substituted cathinone—a category of controlled substances under Florida law.

After the State rested, appellant made a boilerplate motion for judgment of acquittal simply stating that the State had failed to prove a prima facie case. The trial court denied the motion. Appellant put on no witnesses or evidence in defense.

Appellant did not object to the jury instructions. The jury was instructed on the law, including that appellant "has been accused of the crime of Possession of a Substituted Cathinone." Further instructions provided that "[c]ertain drugs and chemical substances are by law known as 'controlled substances.' Substituted Cathinone is a controlled substance." The instruction stated that the State must prove the following two elements beyond a reasonable doubt: (1) appellant possessed a substance, and (2) the substance was substituted cathinone.

During closing argument, defense counsel did not mention the drug by name but argued that appellant was being unlawfully targeted by the police. The jury returned a verdict of guilty of possession of a substituted cathinone as charged. Appellant was adjudicated guilty and sentenced to 67.65 months in state prison. This appeal follows.

## Analysis

Appellant makes several claims on appeal, none of which were preserved. Therefore, only fundamental error would warrant reversal. To be fundamental, the error "must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003) (quoting *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960)). "Thus, an error is deemed fundamental 'when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.'" *Id.* (quoting *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998)).

## Controlled Substance Statutes

Appellant was charged with possession of a substituted cathinone in violation of section 893.13(6). Section 893.13(6)(a) states:

> A person may not be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his or her professional practice or to be in actual or

2

constructive possession of a controlled substance except as otherwise authorized by this chapter.  A person who violates this provision commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 893.13(6)(a), Fla. Stat. (2023).

Under Chapter 893, "[c]ontrolled substance" is defined as "any substance named or described in Schedule I-V of s. 893.03." § 893.02(4), Fla. Stat. (2023).  Section 893.03, Florida Statutes (2023), lists the different controlled substances in Schedules I through V.

Section 893.03(1), Florida Statutes (2023), enumerates substances classified as Schedule I, which have no currently accepted medical use in the United States.  Within Schedule I, section 893.03(1)(c)191., Florida Statutes (2023), provides:

> **191. Substituted Cathinones**.--Unless specifically excepted, listed in another schedule, or contained within a pharmaceutical product approved by the United States Food and Drug Administration, any material, compound, mixture, or preparation, including its salts, isomers, esters, or ethers, and salts of isomers, esters, or ethers, whenever the existence of such salts is possible within any of the following specific chemical designations:
>
> > a. Any compound containing a 2-amino-1-phenyl-1-propanone structure;
> >
> > b. Any compound containing a 2-amino-1-naphthyl-1-propanone structure; or
> >
> > c. Any compound containing a 2-amino-1-thiophenyl-1-propanone structure,
>
> whether or not the compound is further modified:
>
> (I)  With or without substitution on the ring system to any extent with alkyl, alkylthio, thio, fused alkylenedioxy, alkoxy, haloalkyl, hydroxyl, nitro, fused furan, fused benzofuran, fused dihydrofuran, fused tetrahydropyran, fused alkyl ring, or halide substituents;

(II) With or without substitution at the 3-propanone position with an alkyl substituent or removal of the methyl group at the 3-propanone position;

(III) With or without substitution at the 2-amino nitrogen atom with alkyl, dialkyl, acetyl, or benzyl groups, whether or not further substituted in the ring system; or

(IV) With or without inclusion of the 2-amino nitrogen atom in a cyclic structure, **including, but not limited to**: . . . .

*Id.* (emphasis added).  The statute then provides a list of substituted cathinones "including, but not limited to," forty-five specific substances. *See* § 893.03(1)(c)191.(IV)(A)-(SS), Fla. Stat. (2023).  Dimethylpentylone is not one of those specific substances.

In *Jackson v. State*, No. 4D2024-0819, --- So. 3d ---, 2025 WL 1119094 (Fla. 4th DCA Apr. 16, 2025), where the defendant was also convicted of possession of Dimethylpentylone, we noted that this list of substituted cathinones is "an extensive, non-exhaustive list" and "is intended to be expansive and to include other chemicals similar in nature to those listed." *Id.* at *3-*4.  We rejected the defendant's claim that possession of Dimethylpentylone was not a crime, even though it was not one of the specific chemicals listed in section 893.03(1)(c)191., because the State's expert testified that Dimethylpentylone fit within the statutory definition of a substituted cathinone.  *Id.* at *4.  In other words, section 893.03(1)(c)191. provided the criteria to determine whether a specific substance fell within the statutory definition, and expert testimony applied that criteria to Dimethylpentylone, finding that it was a substituted cathinone within the statutory definition.

### Information Charges a Crime

Appellant contends that the information failed to properly charge an offense because the information failed to allege an essential element—that the substance possessed was a controlled substance.  Appellant contends "substituted cathinone" is "broader in meaning than statutory language."

Although appellant failed to raise a challenge to the information in the trial court, "[a] fundamental defect in a charging document can be raised for the first time on appeal and is reviewed for fundamental error." *Long v. State*, 191 So. 3d 554, 555 (Fla. 4th DCA 2016) (citing *Castillo v. State*, 929 So. 2d 1180, 1181 (Fla. 4th DCA 2006)).  However, "[i]f the insufficiency of the information is such that the information does not

4

wholly fail to charge a crime against the defendant, the failure to timely raise the defect by motion to dismiss constitutes a waiver of such insufficiency." *Cantanese v. State*, 251 So. 2d 572, 573 (Fla. 4th DCA 1971).

The information charged appellant with a crime, possession of substituted cathinone. *See* § 893.13(6), Fla. Stat. (2023); § 893.03(1)(c)191., Fla. Stat. (2023). Appellant did not move to dismiss the information and thus has waived any insufficiency, if there was one.

## Jury Instructions

While appellant concedes that he did not object to the jury instructions, he claims that fundamental error occurred because the erroneous instructions misstated the law and lessened the State's burden. The jury instructions required the State to prove two elements beyond a reasonable doubt: (1) "[Appellant] possessed a substance"; and (2) "[t]he substance was Substituted Cathinone." The jury was also instructed that "[c]ertain drugs and chemical substances are by law known as 'controlled substances.' Substituted Cathinone is a controlled substance." Appellant argues the instruction as given was "legally false," as not all substituted cathinones are controlled substances, although nothing in this record supports appellant's claim.

We need not address this issue further, because the failure to instruct or an inaccurate instruction on an element of the crime which is not disputed in the record is not fundamental error. *See Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002); *State v. Delva*, 575 So. 2d 643, 645 (Fla. 1991). Appellant never disputed Dimethylpentylone's illicit nature or that it was a substituted cathinone prohibited as a Schedule I Controlled substance under section 893.03(1)(c)191.

## Sufficiency of the Evidence

Appellant claims that the trial court erred in denying his motion for judgment of acquittal because the State failed to establish appellant possessed the specific chemical compound of a substituted cathinone that is a controlled substance. This claim too is unpreserved, as this argument was never made at trial. "A motion for judgment of acquittal must fully set forth the grounds on which it is based." *Romero v. State*, 901 So. 2d 260, 265 (Fla. 4th DCA 2005) (citing Fla. R. Crim. P. 3.380(b) (2004)). A boilerplate motion for judgment of acquittal, or a motion which asserts that the State failed to present a prima facie case without more, is insufficient. *Id.* (citing *Woods v. State*, 733 So. 2d 980, 984-85 (Fla. 1999)).

Nevertheless, the State produced competent substantial evidence that Dimethylpentylone was a substituted cathinone through the testimony of the forensic chemist. Although the chemist's testimony was not as detailed in describing the chemical composition of the drug, as was the case in *Jackson*, the defendant did not object to her testimony or argue that her testimony was insufficient to prove that element of the crime.

## Dimethylpentylone is a Prohibited Substance

Appellant argues Dimethylpentylone does not conform to the chemical structure of what Florida law defines as a substituted cathinone. As such, appellant argues he was convicted of a non-existent crime, requiring reversal for discharge of his conviction and sentence. In support of his argument, appellant relies on treatises or journals on chemical compositions for substituted cathinones.

However, in the trial court, appellant did not challenge the expert's opinion that the drug was a substituted cathinone or her description of Dimethylpentylone's chemical structure. Therefore, the argument is not preserved.

## Separation of Powers

Appellant lastly argues we violated the separation of powers in *Jackson* by determining that Dimethylpentylone constitutes a substituted cathinone under section 893.03(1)(c)191., Florida Statutes (2023). He contends that the Legislature delegated to the Attorney General the authority to reschedule, remove, or control new substances under sections 893.035 and 893.0356, Florida Statutes (2023).

Section 893.035, Florida Statutes (2016), authorizes the Attorney General to designate and reschedule controlled substances under section 893.03. The statute's purpose was to enable the State to more quickly identify drugs which could produce effects similar to the drugs within the statutory schedule of controlled substances and to criminalize those drugs more rapidly than relying on the legislative process. Section 893.035 specifically provides:

> (1)(a) New substances are being created which are not controlled under the provisions of this chapter but which have a potential for abuse similar to or greater than that for substances controlled under this chapter. These new substances are sometimes called "designer drugs" because

6

they can be designed to produce a desired pharmacological effect and to evade the controlling statutory provisions. Designer drugs are being manufactured, distributed, possessed, and used as substitutes for controlled substances.

. . .

(e) These designer drugs can be created more rapidly than they can be identified and controlled by action of the Legislature. There is a need for a speedy and expert administrative determination of their proper classification under this chapter. It is therefore necessary to delegate to an administrative agency restricted authority to identify and classify new substances that have a potential for abuse, so that they can be controlled in the same manner as other substances currently controlled under this chapter.

§ 893.035(1), Fla. Stat. (2016). The statute delegates powers to the Attorney General:[1]

(2) The Attorney General shall apply the provisions of this section to any substance not currently controlled under the provisions of s. 893.03. The Attorney General may by rule:

(a) Add a substance to a schedule established by s. 893.03, or transfer a substance between schedules, if he or she finds that it has a potential for abuse and he or she makes with respect to it the other findings appropriate for classification in the particular schedule under s. 893.03 in which it is to be placed.

At issue in this case, as was at issue in *Jackson*, is whether Dimethylpentylone is a "substituted cathinone." Appellant argues that in upholding the conviction in *Jackson*, we violated the separation of powers doctrine and usurped the Attorney General's rulemaking authority by determining that Dimethylpentylone is a Schedule I controlled substance. We disagree.

Appellant takes issue with the fact that neither the trial court nor this Court analyzed the factors under section 893.035(4), Florida Statutes (2016), in determining whether Dimethylpentylone was a controlled

---

[1] We do not address whether the delegation of authority to the Attorney General is constitutional, as neither party has addressed that issue.

substance. However, that analysis is required when the Attorney General is considering whether to control a **new substance** or remove a substance from control. § 893.035(4), Fla. Stat. (2016) ("In making any findings under this section, the Attorney General shall consider the following factors with respect to each substance proposed to be controlled or removed from control . . . .").

The issue in *Jackson* was not whether Dimethylpentylone should be added as a new controlled substance, but whether Dimethylpentylone was a "substituted cathinone," already designated a controlled substance under section 893.03(1)(c)191., Florida Statutes (2023). 2025 WL 1119094 at *2. Section 893.03(1)(c)191. described what the chemical composition of "substituted cathinones" must include in order to be considered Schedule I controlled substances. The expert's testimony in *Jackson* showed that Dimethylpentylone was a controlled substance pursuant to the terms of the statute. *Id.* at *4. The drug was not a new drug, but one described in the statutory chemical formulas. On that issue, the trial court accepted unobjected-to expert testimony, and we merely held that competent, substantial evidence supported the conviction. *Id.* at *5. The chemist in *Jackson* did not opine that Dimethylpentylone was its own type of controlled substance, but rather that it fit the definition of a "substituted cathinone," which the Legislature had already designated as a controlled substance.

Put simply, the procedures outlined in section 893.035 did not apply to *Jackson*, nor do those procedures apply here, because the State did not argue that Dimethylpentylone was a new drug, but one already regulated pursuant to section 893.03(1)'s definitions. Thus, we did not overstep our judicial role in either *Jackson* or this case. Although occasions may occur when the dividing lines between the government branches' powers appear blurred, "basic judicial interpretation of the law is not one of them." *State v. Crose*, 378 So. 3d 1217, 1242 (Fla. 2d DCA 2024). "It is emphatically the province and the duty of the judicial department to say what the law is." *Id.* (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). "A court's function is to interpret statutes as they are written and give effect to each word in the statute." *Fla. Dep't of Revenue v. Fla. Mun. Power Agency*, 789 So. 2d 320, 324 (Fla. 2001).

The narrow question in both *Jackson* and this case is whether the State presented legally sufficient evidence that Dimethylpentylone is a "substituted cathinone." In both cases, the State presented unobjected-to, and frankly unrefuted, expert testimony that Dimethylpentylone is indeed a "substituted cathinone." No separation of powers violation occurred.

8

## Conclusion

The State proved that appellant possessed a substituted cathinone, a Schedule I controlled substance under section 893.03(1), and violated section 893.13(6)(a). Appellant failed to preserve any of the issues argued in his brief and failed to show fundamental error. We thus affirm appellant's conviction and sentence.

*Affirmed.*

GROSS and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***